IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
NORTHERN DIVISION

**CIV - FERGUSON**

**00 - 6055**

BELLSOUTH MOBILITY, INC.,                )    CASE NO.
                                         )
             Plaintiff,                   )    Judge _____
                                         )
v.                                       )
                                         )    MAGISTRATE JUDGE
MOBILEONE CELLULAR NETWORK, INC.,        )        ~ SNOW
                                         )
             Defendant.                   )
_____  )

### NOTICE OF REMOVAL

MobileOne Cellular Network, Inc. ("MobileOne"), acting pursuant to 28

U.S.C. §§ 1331, 1441, and 1446, hereby files this Notice of Removal removing this action

from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County,

Florida, to the United States District Court for the Southern District of Florida, Northern

Division. In support of this Notice of Removal, MobileOne states as follows:

      1.     This Court has original jurisdiction over this action pursuant to 28

U.S.C. §1331, and this action may be removed pursuant to 28 U.S.C. §1441, because it is

a civil action that arises under the laws of the United States.

      2.     BellSouth Mobility, Inc. ("BMI") filed the pending action against

MobileOne in the Circuit Court of the Seventeenth Judicial Circuit for Broward County,

Florida, on or about November 30, 1999. A copy of the Complaint and process served

upon MobileOne is attached hereto as Exhibit 1. No other pleading or process has been

served upon MobilOne.

      3.     MobileOne was served with a copy of the Summons and Complaint on

December 13, 1999. Section 1446(b) of Title 28 requires that any notice of removal be



filed within 30 days of the moving party's receipt of the initial pleading setting forth the claim for relief upon which the action is based.

4. This Notice of Removal is therefore timely under 28 U.S.C. §1446(b) because it is being filed within 30 days of receipt by MobileOne of a copy of the initial pleading setting forth the claim for relief by BMI.

5. This Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 stems from the fact that resolution of BMI's claim will require interpretation and application of federal law - namely, the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §151 et seq., and the regulations and policies promulgated by the FCC under the Act. 47 C.F.R. §22.900 et seq.

6. The claim is preempted by §332(c)(3)(A) of the Act, which states in pertinent part as follows:

> Notwithstanding §§152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rate charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. §332(c)(3)(A).

7. Pursuant to 28 U.S.C. §1441(a), this Court is the proper forum for the instant litigation because it is the federal court for the district and division embracing the place where the state court suit is pending.

8. In removing this action, MobileOne expressly reserves any and all available defenses, including without limitation or waiver of other defenses, lack of service of process, insufficiency of process, lack of personal jurisdiction, improper venue, and statute of limitations and repose. MobileOne may assert these and other defenses by motion or answer.

9.    Pursuant to 28 U.S.C. §1446(d), BMI is being provided with written notice of the filing of this Notice of Removal.

10.    Pursuant to 28 U.S.C. §1446(d), a copy of this Notice is being filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

WHEREFORE, MobileOne respectfully requests that the Court exercise jurisdiction over this matter and proceed with resolution of this case as if it had been originally filed herein.

Dated:  January 12, 2000

Respectfully submitted,

ALAN E. GREENFIELD, P.A.
2600 Douglas Road, Suite 911
Coral Gables, FL  33134
305-442-1731

Attorneys for MobileOne Cellular
Network, Inc.

By: _____
Alan E. Greenfield, Esq.
Bar No. 031559

Of Counsel:

Leon B. Kellner, Esq.  FBN.462179
Lewis J. Paper, Esq.
Edward E. Sharkey, Esq.
Jacob S. Farber, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C.  20037
(202) 785-9700

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2000, a copy of the foregoing Notice of Removal was delivered by first-class U.S. mail, postage prepaid and via facsimile to the following:

Richard G. Gordon, Esq.
Heinrich Gordon Hargrove Weihe & James, P.A.
Broward Financial Centre, Suite 1000
500 East Broward Boulevard
Ft. Lauderdale, FL 33394
Telephone (954) 527-2800

*Attorney for the Plaintiff, Bellsouth Mobility, Inc.*

Alan E. Greenfield

EXHIBIT 1

CACE

25

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

BELLSOUTH MOBILITY, INC.,      )
                               )
    Plaintiff,                  )
                               )
v.                             )
                               )
MOBILEONE CELLULAR NETWORK, INC.,  )
                               )
    Defendant,                  )
_____)

**99020275**

CASE NO.: _____

JUDGE: _____

### SUMMONS

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this Summons, a copy of the Complaint, and a copy of Emergency Motion for Temporary Injunction in this lawsuit on defendant:

**Antonio Rodriguez,  Registered Agent**
**MOBILEONE CELLULAR NETWORK, INC.**
**2601 Biscayne Blvd.**
**Miami, FL 33137**

### IMPORTANT

    A lawsuit has been filed against you.  You have 20 calendar days after this Summons is served on you to file a written response to the attached Complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**RICHARD G. GORDON, ESQ.**
**HANS OTTINOT, ESQ.**
**HEINRICH GORDON HARGROVE WEIHE & JAMES, P.A.**
**500 E. Broward Boulevard, Suite 1000**
**Fort Lauderdale, FL 33394**
**(954) 527-2800**

**NOV 3 0 1999**

DATED on _____, 1999.

(SEAL)

AS CLERK OF THE COURT

ROBERT E. LOCKWOOD

By: _____

VALERIE FORD

As Deputy Clerk

A TRUE COPY
Circuit Court Seal

## **IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el bribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

RICHARD G. GORDON, ESQ.
HANS OTTINOT, ESQ.
HEINRICH GORDON HARGROVE WEIHE & JAMES, P.A.
500 E. Broward Boulevard, Suite 1000
Fort Lauderdale, Florida 33394
Telephone: (954) 527-2800

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme di-dessous.

RICHARD G. GORDON, ESQ.
HANS OTTINOT, ESQ.
HEINRICH GORDON HARGROVE WEIHE & JAMES, P.A.
500 E. Broward Boulevard, Suite 1000
Fort Lauderdale, Florida 33394
Telephone: (954) 527-2800

G:\LAW\80884\026\summons.doc

3

CACE

IN THE CIRCUIT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

25

BELLSOUTH MOBILITY, INC.

    Plaintiff,

v.

MOBILONE CELLULAR NETWORK, INC.

    Defendant.

CASE NO._____ 99020275

JUDGE:_____

_____/

## COMPLAINT

Plaintiff, BELLSOUTH MOBILITY, INC., ("BELLSOUTH") sues Defendant, MOBILONE CELLULAR NETWORK, INC. ("MOBILONE"), for damages, and states:

### THE PARTIES AND JURISDICTION

1.    Plaintiff, BELLSOUTH, is a corporation organized and existing under the laws of the State of Georgia and is authorized to do business in the State of Florida.

2.    MOBILONE is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

3.    This is an action for damages in excess of $15,000 exclusive of interest, attorneys' fees and costs.

### FACTS COMMON TO ALL CLAIMS OF RELEIF

4.    BELLSOUTH is a federally licensed provider of cellular telephone services. BELLSOUTH provides cellular telephone services directly to consumers at retail as well as on a wholesale basis to resellers of cellular telephone services.

CASE NO.: _____

5.    On November 11, 1993, MOBILONE entered into a Reseller Sales Agreement (the "Reseller Agreement") with BELLSOUTH whereby MOBILONE agreed to purchase cellular telephone services from BELLSOUTH in order to resell the services to consumers at retail. A copy of the Reseller Agreement is attached hereto as Exhibit "A" and incorporated by reference.

6.    Under the Reseller Agreement, MOBILONE agreed to pay all charges for cellular telephone services received from BELLSOUH. MOBILONE specifically agreed to pay:

> (a) all charges for Service furnished to it or its Authorized Users' Cellular Mobile Radio Units, as well as any other charges billed to the Access Numbers issued for Customer's use by the Company. Bills are payable by the payment due date indicated on the monthly bill.

Reseller Agreement at ¶ 12.

7.    In accordance with the Reseller Agreement, MOBILEONE agreed to pay a late payment charge for failing to pay bills prior to the payment due date. The Resale Agreement provided that the late payment charge would be at the rate of 1.5% per month and it would apply to the prior balance.

8.    BELLSOUTH provided cellular telephone services to MOBILONE pursuant to the Reseller Agreement. MOBILEONE has been billed by BELLSOUTH for the cellular telephone services. MOBILEONE has refused to pay for the cellular telephone services despite numerous demands for payment.

9.    MOBILEONE currently owes BELLSOUTH a past due balance in the amount of $1,907,993.80. Because MOBILEONE has refused to pay the past due balance, BELLSOUTH had no choice but to terminate the Reseller Agreement on August 12, 1999.

2

CASE NO.: _____

9.    All conditions precedent to this action have been performed or waived or have occurred.

## COUNT I—BREACH OF CONTRACT

10.    BELLSOUTH reincorporates and realleges the allegations in Paragraphs 1-9.

11.    This is an action for breach of contract against MOBILONE for its refusal to honor the terms and conditions of the Reseller Agreement.

12.    MOBILONE has breached the Reseller Agreement by failing and /or refusing to make payment to BELLSOUTH for services furnished by BELLSOUTH in the amount of $1,907,993.80, as reflected in the statements of account attached hereto as Exhibit "B" and incorporated by reference.

13.    As a result of MOBILONE's breach of the Reseller Agreement, BELLSOUTH has sustained damages in the amount of $1,907,993.80.

WHEREFORE, BELLSOUTH demands judgment in its favor and against MOBILONE in the sum of $1,907,993.80, plus interest, together with attorneys' fees, court costs, and such other relief as the court deems appropriate.

## COUNT II—OPEN ACCOUNT

14.    BELLSOUTH reincorporates and realleges the allegations in Paragraph 1-9.

15.    This is an action for an open account against MOBILONE arising from the purchase of cellular telephone services from BELLSOUTH.

16.    Over a five-year period, BELLSOUTH provided cellular telephone services to MOBILEONE without any interruption.

3

CASE NO.: _____

17.    As a result of the services provided by BELLSOUTH, MOBILEONE owes BELLSOUTH a sum of $1,907,993.80, according to the statements of account attached hereto as Exhibit "B" and incorporated by reference.

WHEREFORE, BELLSOUTH demands judgment in its favor and against MOBILONE in the sum of $1,907,993.80, plus interest, together with attorneys' fees, court costs, and such other relief as the court deems appropriate.

## COUNT III—ACCOUNT STATED

18.    BELLSOUTH reincorporates and realleges the allegations in Paragraphs 1-9.

19.    This is an action for account stated for failing to pay a past due balance under the Reseller Agreement.

20.    Before the institution of this action, BELLSOUTH and MOBILEONE had business transactions between them. MOBILONE agreed to pay past due balances in accordance with the terms set forth in the Reseller Agreement. MOBILONE currently owes BELLSOUTH a past due balance in the sum of $1,907,993.80, as reflected in the statements of account attached hereto as Exhibit "B" and incorporated by reference.

21.    BELLSOUH has billed MOBILONE for the past due balances, and MOBILONE has not objected to the statements of account attached hereto.

WHEREFORE, BELLSOUTH demands judgment in its favor and against MOBILONE in the sum of $1,907,993.80, plus interest, together with attorneys' fees, court costs, and such other relief as the court deems just and proper.

4

CASE NO.: _____

## COUNT IV—UNJUST ENRICHMENT

22.    BELLSOUTH reincorporates and realleges the allegations in Paragraphs 1-9.

23.    This is an action for unjust enrichment against MOBILONE for its failure to pay for services received under the Reseller Agreement.

24.    MOBILONE has been unjustly enriched due to its refusal to pay BELLSOUTH for services furnished under the Reseller Agreement.

25.    Under the Reseller Agreement, BELLSOUTH is entitled to compensation for services rendered to MOBILEONE.  It would be unjust for MOBILONE to retain the benefit it received under the Reseller Agreement without compensating BELLSOUTH.

WHEREFORE, BELLSOUTH demands judgment in its favor and against MOBILONE in the sum of $1,907,993.80, plus interest, together with attorneys' fees, costs, and such other relief as the court deems appropriate.

Dated this 30th day of November 1999.

> HEINRICH GORDON HARGROVE
>  WEIHE & JAMES, P.A.
> Attorneys
> Broward Financial Centre, Suite 1000
> 500 East Broward Boulevard
> Fort Lauderdale, FL 33394
> Telephone: (954) 527-2800; fax: (954) 524-9481
>
> By: _____
>      RICHARD G. GORDON
>      Florida Bar No. 030366
>      HANS OTTINOT
>      Florida Bar No. 077577

G:\LAW\80884\026\Pleadings-Misc\COMPLAINT.doc

# EXHIBIT "A"

## RESELLER SALES AGREEMENT

THIS AGREEMENT is made and entered into by and between BellSouth Mobility Inc (the Company) and MobileOne Cellular Network, Inc (the "Customer"), and will become effective on the date of acceptance by the Company. Throughout this Agreement references to the Company shall include the Licensee (as defined below) in the Cellular Geographic Service Area in which the Customer purchases the Service. This Agreement incorporates by reference the Schedule(s) of Rates and Charges and Service Order(s) attached hereto, any Service Order subsequently submitted by the Customer and accepted by the Company, any Schedule(s) of Rates and Charges subsequently put into effect by the Company.

WHEREAS, the Company provides management, operational and other services, for the Licensees of Cellular Systems within various greater metropolitan areas;

WHEREAS, the Licensees each desire to sell Service providing access to, and certain other optional features in relation to the use of the Cellular Systems; and

WHEREAS, the Customer desires to purchase the Service from one or more Licensees; and

NOW THEREFORE, for and in consideration of the premises and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the parties do agree as follows:

1.    **Definitions.** The following terms, whenever used in this Agreement, shall have the respective meanings set forth below:

(a)    **Access Number** - A telephone number provided to the Customer by the Licensee and associated with the Customer's or and Authorized User's Cellular Mobile Radio Unit, enabling use of the Cellular System.

(b)    **Authorized User** - A person, firm or corporation that is authorized by the Customer to use the service purchased by the Customer.

(c)    **Cell** - A geographic region within which Customers or Authorized Users are served by a particular Cell Site.

(d)    **Cell Site** - A building location containing radio and control equipment necessary to complete the talking path between a Cellular Mobile Radio Unit and the Mobile Telephone Switching Office.

(e)     **Cellular Geographic Service Area** - A greater metropolitan area within which the Licensee is authorized to provide cellular service by the Federal Communications Commission.

(f)     **Cellular Mobile Radio Unit** - The Customer's or Authorized User's radio telephone equipment, capable of being moved from location to location, that is technically and operationally compatible with the Cellular System.

(g)     **Cellular System(s)** - The radio telecommunications system that is comprised of a Mobile Telephone Switching Office (MTSO), Cell Sites, and dedicated interconnecting facilities, which provides cellular radio telecommunications service.

(h)     **Licensee(s)** - The holders of licenses for and owners of Cellular Systems for which a Schedule of Rates and Charges is attached hereto and for which the Company provides management, operational and other services.

(i)     **Mobile Telephone Switching Office (MTSO)** - The switching and control equipment which coordinates and controls the routing and completion of calls in the Cellular System.

(j)     **Service** - All services provided by a Licensee as offered herein.

2.     **Duties of the Company.** The Company agrees for and on behalf of each Licensee for which a Schedule of Rates and Charges is attached hereto and acknowledged by the Customer that such Licensee(s) will provide the Service to the Customer upon the terms and conditions specified herein and at rates and charges then currently in effect. This duty is conditioned upon the Licensee's ability to obtain, retain, and maintain, without unreasonable construction and maintenance of the circuits and equipment necessary to provide the Service. A schedule of those Licensees from which Customer has agreed to purchase Service as of the date of execution of this Agreement is attached hereto as Exhibit "A".

3.     **Availability of the Service.** The Service is available to Customers and their Authorized users with Cellular Mobile Radio Units equipped for such Service when within the range of Cell Sites in a Cellular Geographic Service Area for which Customer has acknowledged a Schedule of Rates and Charges. Service may be temporarily refused or limited because of system capacity limitations, is subject to transmission limitations caused by atmospheric and other natural or artificial conditions adversely affecting transmissions, and may be temporarily interrupted or curtailed due to equipment modifications, upgrades, relocations, repairs and similar activities necessary for the proper or improved operation of the Service. Customer orders for Service will not be accepted more than sixty days prior to the date the Customer requests Service to be provided.

## 4. Limitation of Company's Liability.

(a) Customer understands that (1) alternative competing communications carriers are available; (2) occasional interruptions or irregularities in the Service may occur; (3) any potential harm from interruptions or irregularities in the Service is speculative in nature; (4) the Licensees cannot offer the Service at rates which reflect its value to each customer; and (5) the Company and the Licensees assume no responsibility other than that contained in this Agreement. Accordingly, Customer agrees that any liability the Company and the Licensees may have due to interruptions or irregularities in the Service shall not exceed the amount of the prorated charge (as defined below) to Customer for the period in which the interruption or irregularity occurred. The Company and Customer agrees to defend and indemnify the Company and the Licensees for any claims (including claims based on the Company's and the Licensees' negligence) arising out of the use of the Service by the Customer or its Authorized Users. The above is in lieu of any other express or implied warranties including any warranties of Merchantability or Fitness For a Particular Purpose. The Company's and the Licensees' sole liability to the Customer and its Authorized Users for loss and damages arising out of mistakes, omissions, interruptions, delays, errors or defects in facilities furnished by the Company and the Licensees, occurring in the course of furnishing Service is as follows:

(1) A credit allowance, as described in Subsection 4(a)(3) below, will be made, at the Customer's request, in the form of a pro rata adjustment of the fixed monthly charges billed to the Customer as the Company's and the Licensees' full and complete liability. Fixed monthly charges are the monthly charges for access, minimum usage, and optional features per Access Number, all as described in the Schedule of Rates and Charges then currently in effect.

(2) Such credit allowance will be based upon the period of time in which such mistakes, omissions, interruptions, delays, errors or defects in facilities furnished by the Company and the Licensees, existed. Any such interruption will be measured from the time it is reported to or detected by the Company and the Licensees, whichever occurs first. No adjustments shall be earned by accumulating periods of non-continuous interruption. In the event the Customer or its Authorized User is affected by such interruption for a period of less than twenty-four hours, no such adjustment shall be made. When an interruption exceeds twenty-four hours, the length of interruption will be measured in twenty-four hour days. A fraction of a day consisting of less than twelve hours will not be credited, and a period of twelve hours or more will be considered an additional day.

(3)   The credit allowance will be computed by dividing the length of the Service interruption by a standard thirty day month, and then multiplying the result by the Licensee's fixed monthly charges for each interrupted Access Number. Credit for the minimum usage charge will only be given to the extent the Customer's usage for the month is less than the minimum. In no case will credit exceed the fixed monthly charges. No other liability will attach to the Company or Licensee in consideration of such mistakes, omissions, interruptions, delays, errors or defects in Service.

(4)   A credit allowance will not be given for mistakes, omissions, interruptions, delays, errors or defects caused by the negligence or willful act of the Customer or Authorized User or mistakes, omissions, interruptions, delays, errors or defects caused by the failure of equipment or service not provided by the Company or a Licensee.

(b)   The Company and Licensees are not liable for any act or omission attributable to any non-Company owned facilities used in connection with the Service.

(c)   The Company and Licensees shall in no event be liable for interruptions or delays in transmission, errors or defects in transmission, or failure to transmit, when caused by acts of God, fire, war, riots, Government authorities or other causes beyond its control, including, but not limited to, the causes described in the second sentence of Section 4 hereof.

(d)   The Customer hereby agrees to indemnify and save the Company and Licensees harmless against claims for libel, slander, or infringement of copyright from the material transmitted over its facilities by it or its Authorized Users; against claims for infringement of patents arising from combining or using apparatus or systems of the Customer or its Authorized Users with the facilities of the Company and Licensees; and against all other claims arising out of any act or omission of the Customer or its Authorized Users in connection with facilities or Service provided by the Company and Licensees. The indemnification provisions are applicable to the Customer and its Authorized User(s) and Customer agrees to notify and bind its Authorized User(s) to these indemnifications.

(e)   The Company and Licensees are not liable for damages for any accident or injury occasioned by the use of the Service or the presence of the Cellular Mobile Radio Unit.

(f)   The Company and Licensees are not liable for any defacement or damage to the Customer's or any other personal or real property resulting from the presence of the Cellular Mobile Radio Unit.

(g)    The Company's and Licensees liability for recording service and billing is as follows:

(1)    If access or message detail, of whatever nature, is not available because the Company or Licensee lost or damaged tapes or incurred recording system outages, the Company and Licensee will estimate volume of activity and associated revenue based on previously known values and/or billing data. Based thereon, the Company and Licensee will bill the Customer for activity occurring during the period on an average or estimated basis.

(2)    When the Company and Licensee are notified that, due to its error or omission, incomplete data has been provided to a Customer, the Company will make every effort to locate and/or recover the data and provide new magnetic tapes to the Customer at no additional charge. Such request to recover the data must be made within 30 days from the date the details were initially made available.

(3)    Except for the remedies set forth in (1) and (2) above, the Company, the Licensee(s) and their agents shall not be liable to the Customer for any claim for relief, including but not limited to damages of any kind, attributable to any acts or omissions in the performance of recording/billing service, in the absence of willful misconduct.

**THE LIABILITY OF THE COMPANY AND LICENSEE(S) IN CONNECTION WITH THE SERVICE PROVIDED BY THE COMPANY AND LICENSEE(S) IS SUBJECT TO THE FOREGOING LIMITATIONS AND THE COMPANY AND LICENSEE(S) MAKE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE PROVISION OF SUCH SERVICE.**

5.    **Use of Services.**

(a)    The Service is furnished for use by the Customer and its Authorized Users for any lawful purpose including resale. An Access Number may be associated with only one Cellular Mobile Radio Unit. Orders, including those which involve the start, a change or the discontinuance of the Service, will be accepted by the Company only from the Customer.

(b)    The Service shall not be used to make foul or profane expressions, to impersonate another person with fraudulent or malicious intent, to call another person so frequently or at such times of day or in any other manner so as to annoy, abuse, threaten, or harass such other person, or for any purpose in violation of the law, or in such manner as to interfere unreasonably with the use of the Service by any of the Company's other Customers or Authorized Users.

5

**6.    Disconnection and Termination of Service by the Company for Cause.**

(a)    Upon non-payment of any sum due the Company, or upon a violation of the conditions governing the furnishing of the Service as provided herein, the Company may, by notice to the Customer in writing or by telephone communication, without incurring any liability to the Customer or any of its Authorized Users, either temporarily discontinue or permanently terminate the furnishing of Service to the Customer and/or the Authorized User (whichever is the cause of such violation), at the Company's sole discretion, either in part or in whole. No notice shall be given to any Authorized User. Service will not be discontinued for at least five days (eight days if mailed) after the Company gives notice of its intent to discontinue or terminate the Service, except as provided herein. The Company shall not be liable to any Authorized User for any damages resulting from interruption of Service as a result of disconnection or termination of Service to Customer.

(b)    Where the Customer or any of its Authorized Users' Cellular Mobile Radio Unit(s) is (are) used with facilities provided by the Company in violation of any of the provisions as is necessary for the protection of its facilities or the Service of its customers. The Customer or its Authorized User shall discontinue such use of the Cellular Mobile Radio Unit or correct the violation immediately and the Customer shall confirm in writing to the Company within five days (following the Company's giving written notice) that such use has ceased or that the violation has been corrected. Failure of the Customer or its Authorized User to discontinue such or to correct the violation or of the Customer to give the required written confirmation to the Company within the time stated above shall result in disconnection of the Service to the Customer and/or the Authorized User (whichever is the cause of such violation), without any credit allowance as provided in Section 4 hereof, until such time as the Customer and such Authorized User complies with the provisions hereof.

(c)    Service to Customer and any Authorized User may be refused, discontinued or terminated without notice in the event the Service is used by Customer or such Authorized User (whichever is the cause of such violation) in such a manner that will adversely affect the Company's Service to any of its other customers or its Authorized User's Cellular Mobile Radio Unit adversely affects the Company's Service to any of its other customers.

7.    **Provision of the Cellular Mobile Radio Unit.**

(a)    The Company is not responsible for the installation, operation, quality of transmission or maintenance of any Customer's Authorized User's Cellular Mobile Radio Unit.

(b)    The Customer or its Authorized User must provide and maintain all Cellular Mobile Radio Unit equipment and ensure that it is technically and operationally compatible with the Cellular System and in compliance with applicable Federal Communications Commission Rules and Regulations.

c)    The operating characteristics of all Cellular Mobile Radio Unit equipment shall be such as not to interfere with the Service offered by the Company to any of its customers. If such interference occurs, then the provisions of paragraph 7 shall be applicable as well as other remedies available to the Company.

8.    **Access Numbers.**    Neither Customer nor any Authorized Users have any proprietary right in the Access Numbers provided to them by the Company.  The Company reserves the right to assign, designate or change such Access Numbers when, in its sole discretion, such assignment, designation or change is reasonable or necessary in the conduct of its business. The Customer shall not retain the Access Numbers provided by the Company for use with services provided by any other company. Customer has no right to return Access Numbers ordered by, assigned to, and accepted by Customer, Customer shall not be entitled to order additional Access Numbers at any time that its inventory of inactive Access Numbers exceeds the lesser of twenty percent (20%) of Customer's then active Access Numbers or one hundred (100).

9.    **Rates and Charges.**    Customer agrees to pay the Company for the use of Service by Customer or its Authorized User at the rates and charges specified in the Schedule of Rates and Charges that is then currently in effect for each Licensee.  Company reserves the right to revise, at its sole discretion and at any time, and from time to time, such rates and charges. Thirty days notice of the effective date of such revised rates and charges shall be provided by the Company to Customer (the "Notice of Rate Revision").  Customer agrees to pay Company for the use of Service by Customer or its Authorized User at the revised rates and charges unless Customer terminates this Agreement by giving notice of its intention to do so within ten (10) days of the date Customer receives the Notice of Rate Revision.  Such termination shall be effective on the effective date of such revised rates and charges.  Notwithstanding anything herein to the contrary unless the rates and charges specified in the Notice of Rate Revision are greater than the Rates and Charges in effect at the time such Notice of Rate Revision is delivered to Customer, Customer shall have no right to cancel this Agreement; furthermore, in the event such rates and charges are increased because Customer ceases to qualify for a lower rate plan (e.g. Customer ceases operations in a required minimum number of Cellular Geographic Service Areas), Customer shall have no right to cancel this agreement.

10. **Relationships Established.** The Customer's relationship to the Company hereunder shall be that of a purchaser of the Service. Neither party hereto shall be deemed to be the agent of the other and neither party shall have authority to act on behalf of the other party except in the matter and to the extent agreed to in writing. Persons retained by a party hereto as employees or agents shall not be deemed to be employees or agents of the other party because of the relationship established hereunder.

11. **Timing for Calls.**

(a)    Customers are charged for usage when calls are originated from or received on their or their Authorized Users' Cellular Mobile Radio Units.

(1)    Chargeable time for completed calls originated by a Cellular Mobile Radio Unit begins when a connection is established to the Company facilities and ends when the Cellular Mobile Radio Unit disconnects.

(2)    Chargeable time for uncompleted calls of a duration of more than 30 seconds originated by a Cellular Mobile Radio Unit begins when a connection is established to the Company facilities and ends when the Cellular Mobile Radio Unit disconnects. There shall be no charge for uncompleted calls originated by a Cellular Mobile Radio Unit which are of a duration of 30 seconds or less.

(3)    Chargeable time for calls received by a Cellular Mobile Radio Unit begins when the call is answered and ends when the Cellular Mobile Radio Unit disconnects.

(b)    The minimum usage charge on each call is one minute. Fractions of a minute are rounded up to the next full minute.

12. **Payment of Charges.**

(a)    The Customer is responsible for payment of all charges for Service furnished to it or its Authorized Users, including, but not limited to, all calls originated by or completed to the Customer's or its Authorized Users' Cellular Mobile Radio Units, as well as any other charges billed to the Access Numbers issued for Customer's use by the Company. Bills are payable by the payment due date indicated on the monthly bill.

(b)    A late payment charge will be applied to any account where payment is not received prior to the date of the next bill. The late payment charge will be 1.50% per month applied to the prior balance only, and will be included in the total amount due on the current bill.

(c)    When payment for Service is made by check, draft or similar negotiable instrument, a charge of $15.00 will be made by the Company for each item returned by a bank to the Company for any reason. This charge is in addition to the late payment charge which may also apply.

13. **Other Carrier Charges.**

(a)    The Customer is responsible for paying all toll charges resulting from the origination of calls to points outside of the Cellular Geographic Service Area from which the call originates and all other charges or calls billed to the Customer's Access Numbers resulting from a provision of cellular radio telecommunications service (i.e. "roamer service") by other carriers on other Cellular Systems regardless of whether Customer's Authorized Users made such calls. (The Parties expressly acknowledge that the custom in the cellular industry is that the cellular carrier bear the risk of fraudulent calls, charged to Access Numbers assigned to such carrier and Customer agrees to indemnify Company for any fraudulent calls charged to Access numbers assigned to Customer.)

(b)    Directory listings, operator-assisted services, telegrams, mailgrams, cablegrams and radiograms are provided by other entities. Customer or its authorized Users may use these services subject to the regulations and charges of such other entities. However, charges for any these services shall not be billed to an Access Number.

(c)    Directory assistance is provided by other carriers as part of the services they furnish the company. Where charges are applicable for directory assistance, such charges shall be passed through to the Customer.

14. **Deposits.**

a)    Company may require Customer to make a suitable deposit or provide an irrevocable standby letter of credit or similar financial bond (security) in the amount specified by the Company to be held by the Company as a guarantee of the payment of this Agreement, also be required to make an additional deposit and provide additional security when the quantity of Service rendered to it by the Company is increased.

(b)    Simple interest at the rate of 6% (six percent) per annum will be paid on any cash deposits for the period during which they are held by the Company. Interest payments will be made annually by means of a credit toward the current billing. Interest will not be paid on deposits held for less than 6 (six) months.

(c)    At the option of the Company, a cash deposit will be credited or security will be returned if the Customer has paid each bill by the payment due date for 12 (twelve) consecutive months. However, at the option of the Company, a cash deposit or security may again be required of the Customer if the Customer's credit standing with the Company has since changed.

9

(d)     The fact that a deposit or security has been made neither relieves the Customer from complying with the Company's regulations on the prompt payment of bills on presentation nor constitutes a waiver or modification of the regulations of the company providing for the discontinuance or termination of Service for non-payment of any sums due the Company for service rendered.

(e)     When Service is terminated, the amount of the cash deposit, including accrued interest, if any, as provided in subsection 14(b) hereof, will be credited against the Customer's final bill and any credit balance which may remain will be refunded.

15.     **Term of Agreement.**

(a)     This Agreement shall become effective on the date that Company accepts this Agreement and the Customer's initial Service Order, which date is specified immediately below the Company's address on the signature page hereof, and shall continue in effect for a term of one (1) year (the "Term"), unless sooner terminated as herein provided. After the Term, this Agreement shall be automatically renewed for a subsequent three (3) year term absent 10 days prior written notice to the contrary delivered by one party to the other.

(b)     The Customer remains responsible for all outstanding charges for the period that Service was rendered.

16.     **Termination.** In the event a third party makes a bonafide offer to purchase MobileOne Cellular Network, Inc subscriber accounts and receivables, MobileOne Cellular Network, Inc shall provide, within 5 business days, BMI with written notice of the terms, conditions and price contained in said third-party offer. BMI will have 10 business days, following receipt of said notice, to agree in writing to match the terms, conditions and price of said offer. In the event BMI timely elects to match said offer, MobileOne Cellular Network, Inc agrees to sell its subscriber accounts and receivables to BMI. In the event BMI does not timely notify MobileOne Cellular Network, Inc of its intent to exercise its first right of refusal, MobileOne Cellular Network, Inc shall be entitled to accept said third-party offer.

17.     **Assignment.** The parties agree that this Agreement may not be assigned or transferred by the Customer, in whole or in part, without the prior written consent of the Company. Said consent shall not be unreasonably withheld, but a new deposit may be required. The Company may, however, upon 5 days written notice to Customer, assign all of its rights, duties and obligations hereunder to an affiliate of the Company or to a partnership in which the Company or its affiliates has an interest.

18. **Waiver.** No failure on the part of either party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy by any such party preclude any other right, power or remedy. No express waiver or assent by any party hereto to any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

19. **Entire Agreement.** This Agreement, including the attached Service Order form, and Schedule of Rates and Charges, and any Service Order subsequently submitted to the Company by Customer or a Schedule of Rates and Charges subsequently put into effect by the Company, supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and this Agreement contains the sole and entire agreement between the parties with respect to the matters covered hereby. In the event of any conflict between the provisions of this Agreement and the document used by Company, the provisions of this Agreement shall control. This Agreement shall not be modified or amended except by an instrument in writing signed by or on behalf of the parties hereto.

20. **Headings.** The headings set out in this Agreement are for convenience of reference only and shall not be deemed a part of this Agreement and shall not affect the meaning or construction of any of the provisions hereof.

21. **Governing Law.** This Agreement is made and delivered in and shall be governed by, construed and enforced in accordance with the laws of the State of Florida.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed on its behalf by its duly authorized Corporate offices and the Customer has executed or caused its duly authorized Corporate officers to execute this Agreement under seal, all as of the day and year written below.

CUSTOMER:                                    COMPANY:

MOBILEONE CELLULAR NETWORK, INC              BELLSOUTH MOBILITY INC.

BY: _____               BY: _____

PRINTED NAME: Roger Miller                  PRINTED NAME: Robert J. Frame

TITLE: Chairman                             TITLE: Vice-President

DATE: 8/11/93                               DATE: 08/13/93

11

# EXHIBIT "B"

## AGED TRAIL BALANCE FOR MOBILEONE CELLULAR 11/99

| 30 DAYS | 60 DAYS | 90 DAYS | 90+ | TOTAL |
|---|---|---|---|---|
| 7,942.62 | 75,236.32 | 90,079.08 | 1,734,735.78 | 1,907,993.80 |

R  BELLSOUTH MOBILITY - MIAMI
   P.O. Box 3050
   Boca Raton, FL 33431-0960
   Attn: Boca Mail Unit

| Account Num | 03002343-001-03 |
| Total Amou | 12,064.46 |
| Due Before: | 11/27/99 |

* Please remit past due ANOUNT PAID:

balance immediately

                                    Make check payable to:

MOBILKONR CELLULAR NET
ATTN: GEORGE NIAMONOS
501 E GARLAND PARK BLV
FORT LAUDERDALE. FL  33374-2151

Bellsouth Mobility
PO BOX 70811
Charlotte, NC  28272-0811

*2827208119*
030030023434001019991104G0001ZU8416407

Summary of Charges for Account: 03002343-001-03

| | |
|---|---|
| Previous Balance | 12,064.46 |
| Payments Received thru 11/08/99 | 0.00 |
| Adjustments to Previous Balance | 0.00 |
| Past Due Balance | 12,064.46 |
| Late Payment Charge | 0.00 |
| Total Past Due    Please remit immediately | 12,064.46 |

Current Monthly Charges thru 11/08/99

Total Current Monthly Charges                —--0.00

Total Amount Due Before 11/27/99                12,064.46

BELLSOUTH MOBILITY - MIAMT
P.O. Box 1058
Boca Raton, FL 33431-0940
Attn: Boca Mail Unit

Account Number: 03001812-001-03
Total Amount 379,165.18
Due Before: 11/27/99

\* Please remit past due AMOUNT PAID:
balance immediately
-----------

MOBILCOMM CELLULAR NETWRK
ATTN: ROGER MILLER
501 E OAKLAND PARK BLV
OAKLAND PARK, FL 33334-2151

Make check payable to:

BellSouth Mobility
PO BOX 70811
Charlotte, NC 28272-0811

*202720W119*
030030010128001019991104000379165101

Summary of Charges for Account: 03001812-001-03

Previous Balance                                      379,165.18
Payments Received thru 11/03/99                            0.00
Adjustments to Previous Balance                           0.00
Past Due Balance                                     379,165.18
Late Payment Charges                                      0.00
Total Past Due     Please remit immediately                        379,165.18

Current Monthly Charges thru 11/04/99

Total Current Monthly Charges                                         0.00

Total Amount Due Before 11/27/99                                379,165.18

R   BELLSOUTH MOBILITY - MIAMI
    P.O. Box 1050
    Boca Raton, FL 33431-0950
    Attn: Boca Mail Unit

Account Num      03003062 001-03
Total Amount     666,713.99
Due Before       11/27/99

* Please remit past due AMOUNT PAID:
  ----------------
  balance immediately
  ----------------

Make check payable to:

MOBILEONE CELLULAR MKT
ATTN: CURT PANGBURN
501 N OAKLAND PARK BLV
FORT LAUDERDALE, FL 33334-2151

BellSouth Mobility
PO BOX 70811
Charlotte, NC 28272 0811

*2N27208119*
03003003062900101599110400000A071395405

Summary of Charges for Account: 03003062-001 03

| | | |
|---|---|---|
| Previous Balance | 666,687.49 | |
| Payments Received thru 11/08/99 | 0.00 | |
| Adjustments to Previous Balance | 22.75 | |
| Past Due Balance | 666,710.74 | |
| Late Payment Charge | 0.00 | |
| Total Past Due     Please remit immediately | | 666,710.24 |

Current Monthly Charges thru 11/04/99

| | | |
|---|---|---|
| Airtime Charges | | |
| Total Airtime Charges (includes taxes) | 3.71 | |
| Total Current Monthly Charges | | 3.71 |

Total Amount Due Before 11/27/99     666,713.95

R    BELLSOUTH MOBILITY - MIAM                    Account #:    : 03003029 001 03
     P.O. Box 3090                                 Total Amou          44,582.27
     Boca Raton, FL 33431-0960                     Due Before:        11/27/99
     Attn: Boca Mail Unit         * Please remit past due AMOUNT PAII:
                                  ----------------------
                                   balance immediately
                                  ----------------------

                                                  Make check payable to:

     MOBILKOMK CHRISTIAN MKT                       BellSouth Mobility
     ATTN: GREG PANGBURN                           PO BOX 70811
     501 K OAKLAND PARK BLV                        Charlotte, NC  28272-0811
     FORT LAUDERDALE, FL  33334-2151
                                      *282720811*
                            030030030299001019991104000044582270002
     Summary of Charges for Account: 03003029-001-03

          Previous Balance                    44,582.27
          Payments Received thru 11/05/99    . . . . . .      0.00
          Adjustments to Previous Balance               0.00
          Past Due Balance                    44,582.27
          Late Payment Charge                           0.00
             Total Past Due    Please remit immediately           44,582.27

     Current Monthly Charges thru 11/04/99

          Total Current Monthly Charges                          .0 00

     Total Amount Due Before 11/27/99                            44,582.27

BELLSOUTH MOBILITY - MIAMI
P.O. Box 3050
Boca Raton, FL 33431-0950
Attn: Boca Mail Unit

Account Numb · 03002408-001-03
Total Amou        805,467.94 ·
Due Before:        11/27/99 ·

AMOUNT PAID:

* Please remit past due
  ----------------------
  balance immediately
  ----------------------

                                                    make check payable to:

MOBILEONE CELLULAR NET
ATTN: CHEC PANGBURN                      BellSouth Mobility
501 R OAKLAND PARK BLV                   PO BOX 70811
FORT LAUDERDALE, FL  33334-2151          Charlotte, NC  28272-0811

                              *28272081119*
                   0300300240820010199911040000805467948.08
Summary of Charges for Account: 03002408-001-03

        Previous Balance                          805,461.49
        Payments Received thru 11/06/99                 0.00
        Adjustments to Previous Balance                 0.00
        Past Due Balance                          805,461.49
        Late Payment Charge                             0.00
        Total Past Due      Please remit immediately          805,461.49

Current Monthly Charges thru 11/04/99

        Airtime Charges
          Total Roamer Charges (includes taxes)          6.45

        Total Current Monthly Charges                              6.45


Total Amount Due Before 11/27/99                               805,467.94

# CIVIL COVER SHEET

CIV - FERGUSON

00-6055

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

BellSouth Mobility, Inc.

## DEFENDANTS

MobileOne Cellular Network, Inc.

MAGISTRATE JUDGE
SNOW

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** State of GA
(EXCEPT IN U.S. PLAINTIFF CASES)

A-N00TA-6055 WDF/CSS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Richard G. Gordon, Esq.
Heinrich Gordon Hargrove Weihe & James, P.A.
500 E. Broward Blvd., Suite 1000
Ft. Lauderdale, FL 33394
954-527-2800

ATTORNEYS (IF KNOWN)
Alan Greenfield
2600 Douglas Road, Suite 911
Coral Gables, FL 33134
(305) 442-1731

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** BROWARD
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

47 U.S.C. Section 201(b); 47 U.S.C. Section 332 (c)(3)(A); Attempt to collect service charges pursuant to federally regulated rates.

## IVa. _____ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General * | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * | | | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights * A or B | | | * A or B |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☐ 1. Original Proceeding
- ☒ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A
☐ CLASS ACTION UNDER F.R.C.P. 23

DEMAND $1,907,993
Check YES only if demanded in complaint.

JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE January 11, 2000

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY: Receipt No. 518284
Date Paid: 1/12/0?
Amount: 150.00
M/fp: _____