IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No.: 00-6055-CIV
Judge Ferguson

BELLSOUTH MOBILITY, INC.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
MOBILEONE CELLULAR NETWORK, INC.,　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　　)
_____)
　　　　　　　　　　　　　　　　　　　　)
MOBILEONE CELLULAR NETWORK, INC.,　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Counter-Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
BELLSOUTH MOBILITY, INC.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Counter-Defendant.　　　　　　)
_____)



**COUNTERCLAIM**

MobileOne Cellular Network, Inc. ("MobileOne") hereby files this Counterclaim against BellSouth Mobility, Inc. ("BellSouth") and states the following:

**Jurisdiction And Venue**

1.　　This is a Counterclaim stating MobileOne's causes of action against BellSouth for (a) violations of the Sherman Antitrust Act, 15 U.S.C. §1, *et seq.*; (b) violations of the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §151 *et seq.*, and regulations and policies promulgated under the Act by the Federal Communications

Commission ("FCC"); (c) violations of the Florida Antitrust Act, F.C.A. § 542.19; (d) breach of contract; (e) intentional interference with prospective business advantage; and (f) estoppel.

2. This Court has subject matter jurisdiction over MobileOne's claims alleging violations of federal law pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over MobileOne's state law claims for violations of the Florida Antitrust Act, breach of contract, intentional interference, and promissory estoppel pursuant to 28 U.S.C. §1367.

3. This Court may exercise personal jurisdiction over BellSouth pursuant to Florida Statutes Annotated ("F.S.A.") §48.193(1)(a) because the causes of action alleged herein arise out of BellSouth's acts and omissions in operating, conducting, engaging in, and carrying on a business in the State of Florida. This Court also has personal jurisdiction over BellSouth pursuant to F.S.A. §48.193(1)(b) because the causes of action alleged herein arise out of tortious acts committed by BellSouth within the State.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to the claims occurred within this District.

5. In connection with the wrongdoing complained of herein, BellSouth directly and indirectly used instrumentalities of interstate commerce, the United States mails and interstate wire facilities.

6. BellSouth's wrongdoing and overall business activity has had a substantial effect on interstate commerce.

1099311 v2; NK8F02!.DOC

## Parties

7. Upon information and belief, BellSouth is a Georgia corporation.

8. BellSouth is one of only two entities licensed by the FCC to provide cellular radiotelephone service (sometimes referred to hereinafter as "cellular service") in South Florida.

9. MobileOne is a Florida corporation that has its principal place of business in Fort Lauderdale, Florida.

10. MobileOne is a reseller of cellular service in South Florida. During all time periods relevant to this Counterclaim, MobileOne aggregated the cellular needs of individual customers and purchased airtime from BellSouth in bulk for the purpose of obtaining more favorable rates.

11. MobileOne is not licensed by the FCC to provide cellular service and had to rely on BellSouth's FCC-licensed facilities in order to provide service to its customers.

## The FCC's Resale Requirement

12. As a common carrier licensed by the FCC to provide cellular service, BellSouth is subject to the Act as well as the FCC regulations and policies promulgated thereunder.

13. Section 201(b) of the Act provides, in pertinent part, as follows:

> All charges, practices, classifications and regulations for and in connection with such [common carrier] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . .

47 U.S.C. § 201(b).

14. Section 202(a) of the Act provides as follows:

3

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons or locality, or to subject any particular person, class of persons or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. §202(a).

15. The FCC has interpreted Sections 201(b) and 202(a) of the Act to require common carriers, including FCC-licensed cellular carriers such as BellSouth, to make their services available for resale on the same rates, terms, and conditions that the carrier provides to its other customers. *See, e.g. Cellular Communications Systems*, 86 FCC 2d 469, 511 (1981). Accordingly, the FCC's issuance of a cellular license to BellSouth for South Florida was and is conditioned on BellSouth's obligation to (a) allow resale by parties like MobileOne, and (b) make airtime available to parties like MobileOne under the same rates and terms as other parties. *Id.; see also* 47 C.F.R. § 20.12. Thus, a "bulk discount (or any offering) made available to one customer must be made available to similarly-situated customers on a non-discriminatory basis." 11 FCC Rcd at 18467. The FCC not only prohibits express prohibitions on resale but also other practices that have the effect of limiting or restricting resale. *See, e.g. Interconnection and Resale Obligations Pertaining to Commercial Mobile Radio Services*, 11 FCC Rcd 18455, 18462 (1996).

16. For all time periods relevant to this Counterclaim, the FCC required cellular carriers like BellSouth to offer to resellers the same bundled packages of services and equipment made available to the carrier's other customers. If BellSouth bundled airtime plans with cellular phones for free or at reduced cost for its retail customers, BellSouth had to make

1099311 v2; NK8F02!.DOC

an equivalent rate or plan available to resellers like MobileOne. *Bundling of Cellular Customer Premises Equipment and Cellular Service*, 7 FCC Rcd 4028, 4035 n.48.

### BellSouth's Market Power

17.     The relevant market has been, during the time period relevant to this Counterclaim, the market for cellular radio telephone service in South Florida.

18.     As one of only two FCC-licensed cellular carriers serving South Florida, BellSouth wielded substantial power in a highly concentrated market during the time period relevant to this Counterclaim. Exact market shares are unavailable, but it is reasonable to believe that BellSouth controlled approximately one half of the market for cellular airtime available to resellers in South Florida.

19.     BellSouth's market power over the sale of cellular airtime to South Florida resellers like MobileOne was enhanced by market conditions which amounted to significant barriers to competition. Those barriers included (a) the inability of MobileOne to obtain a license from the FCC to provide cellular service in South Florida, (b) the substantial and often prohibitive cost of transferring customers to the other cellular carrier in South Florida once they had established a relationship with BellSouth, (c) the inability of MobileOne customers to retain their existing telephone number if their account was moved from BellSouth to the other cellular carrier in South Florida, and (d) the inability of customers to transfer service to another carrier without incurring disruptions in service.

20.     BellSouth's FCC license and the barriers to competition faced by resellers such as MobileOne not only granted substantial market power to BellSouth, but also placed MobileOne in the position of being a captive purchaser of airtime from BellSouth. Practically

speaking, MobileOne had no options and was forced to buy airtime from BellSouth if it wished to compete within the market.

21. As a result, BellSouth enjoyed monopolistic control of an essential facility during the time period relevant to this Counterclaim. MobileOne and other South Florida resellers of cellular service were not able to duplicate the essential facilities held or owned by BellSouth.

### The Parties' Relationship

22. On or about August 11, 1993, MobileOne and BellSouth entered into a Reseller Sales Agreement (the "Reseller Agreement") by which BellSouth agreed to sell cellular airtime to MobileOne for resale to retail customers in accordance with certain terms and conditions. A copy of the Reseller Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

23. In addition to providing cellular airtime to resellers like MobileOne, BellSouth also sold airtime to its own retail customers. Thus, for all time periods relevant to this Counterclaim, BellSouth was both a supplier and a competitor of MobileOne.

24. By its own terms, the Reseller Agreement expired in August 1997. *See* Ex. 1 at ¶ 15 - "Term of Agreement."

25. The parties did not renew the Reseller Agreement. Consequently, at least a substantial portion of the cellular service allegedly provided by BellSouth to MobileOne was provided in the absence of a written agreement.

1099311 v2: NK8F02!.DOC

### BellSouth's Predatory and Discriminatory Practices

26. During all time periods relevant to this Counterclaim, BellSouth offered its retail customers rates and other terms for cellular service more favorable than the rates and terms that BellSouth made available to MobileOne for resale. Those more favorable rates included promotional rates, discounted rates, features and bundled packages with cellular phones.

27. For substantial periods of time relevant to this Counterclaim, BellSouth refused to provide MobileOne with a magnetic tape of billing information that was needed to facilitate MobileOne's provision of bills to its customers. Instead, BellSouth sometimes only offered a paper bill to MobileOne.

28. A magnetic billing tape was critical to MobilOne's ability to process information and rebill its customers in a timely fashion. It was prohibitively expensive for MobileOne to enter, process, and reformat the information from paper bills into its own data system to process bills for its customers.

29. BellSouth's refusal to provide magnetic billing tape was so crucial to MobileOne's ability to compete effectively as to amount to a refusal to provide service itself.

### BellSouth's Breach Of Its Promise To Remedy Rate Discrimination

30. By August 1997, MobileOne had made BellSouth aware of MobileOne's complaints concerning BellSouth's failure to provide rates and bundled packages for cellular service available to MobileOne in accordance with the Reseller Agreement and the Act, as well as the FCC regulations and policies promulgated under the Act.

31. Both before and after August 1997, BellSouth assured MobileOne that lower rates would be forthcoming and that BellSouth would otherwise work with MobileOne to ensure the continued viability of MobileOne's business as a reseller of BellSouth service.

32. In December 1997, MobileOne and BellSouth reached an oral agreement to insure MobileOne's access to cellular service from BellSouth that would comport with the Reseller Agreement and the Act as well as the FCC regulations and policies promulgated under the Act. More specifically, BellSouth agreed to (a) provide MobileOne with information concerning plans and services made available to BellSouth's retail customers, (b) allow MobileOne to have access to any of those plans and services for resale to MobileOne's customers, (c) provide MobileOne with a 25% discount on rates for cellular service provided to MobileOne on a wholesale basis until BellSouth could develop a rate schedule for the sale of cellular service to cellular resellers like MobileOne, with the understanding that the new rate schedule would include a reduction in the rates then being charged by BellSouth to MobileOne; (d) provide MobileOne with magnetic billing tapes for all plans to facilitate rebilling by MobileOne of its customers; and (e) make a prepaid program available to MobileOne for resale.

33. In reasonable reliance on the agreement and promises described in the preceding paragraph, MobileOne decided (a) to not pursue claims it believed it then had against BellSouth, and (b) to continue to preserve, pursue, and execute contracts with customers for use of BellSouth's cellular service.

34. Contrary to the commitments it made in the oral agreement referenced in paragraph 32 above, BellSouth did not make available to MobileOne all of the rate plans and packages BellSouth made available to its other customers.

8

35. Contrary to the commitments it made in the oral agreement referenced in paragraph 32 above, BellSouth did not develop a schedule of reduced rates for the sale of airtime for resellers like MobileOne. Instead, in March 1999, BellSouth not only discontinued its 25% discount, but actually raised rates for analog cellular service being purchased by MobileOne to fulfill the contracts MobileOne had executed with its customers.

36. BellSouth's increase of rates for analog cellular service constituted what is known as a "cost-price squeeze." As the owner of essential facilities, BellSouth raised the cost of airtime for analog cellular service (the input product) to levels matching or exceeding the price which MobileOne could, from a contractual or practical perspective, charge its customers.

37. Due to the prohibitive costs associated with moving customers to the alternative vendor, MobileOne had no choice but to face the increased price for analog cellular service demanded by BellSouth for use of its essential facility.

38. Contrary to the commitments it made in the oral agreement referenced in paragraph 32 above, BellSouth did not timely make available to MobileOne information concerning rates and other packages which BellSouth made available to its customers. In fact, no meaningful information was made available to MobileOne until the spring of 1999 when MobileOne had already incurred irreparable damage in its relations with its customers, and even then, the information provided to MobileOne was, upon information and belief, incomplete.

39. Contrary to the commitments it made in the oral agreement referenced in paragraph 32 above, BellSouth did not make a magnetic billing tape available to MobileOne for all plans.

## Damages From BellSouth's Unlawful Practices

40. By offering preferred rates, plans, discounts, promotions and credits to retail customers, which were unavailable to MobileOne, BellSouth prohibitively increased MobileOne's cost to compete with BellSouth for the same customers in a concentrated market.

41. In addition, the cost-price squeeze in analog cellular service effected by BellSouth was designed to and did in fact drive MobileOne out of the market.

42. BellSouth's refusal to provide MobileOne with reasonable access to airtime, effectuated by the cost-price squeeze, constituted a refusal to provide an essential facility to MobileOne. In addition, BellSouth's refusal to provide MobileOne with magnetic billing tape for all plans, instead requiring MobileOne to accept paper billing, also constituted a refusal to provide an essential facility to MobileOne. As MobileOne lacked the ability the duplicate the essential facilities in question, the denial of access eventually forced MobileOne to exit the market

43. MobileOne discontinued its resale of BellSouth cellular service in the spring of 1999.

44. BellSouth's conduct has harmed competition as well as the public interest in maintaining markets free from dominance by one or a few market participants.

45. MobileOne incurred substantial monetary damages as a result of BellSouth's unlawful conduct.

1099311 v2; NK8F02!.DOC

## COUNT I

### (For Violations Of 47 U.S.C. §201(b))

46. MobileOne hereby incorporates by reference paragraphs 1 - 45 of this Counterclaim as if fully set forth herein.

47. Pursuant to 47 U.S.C. §201(b), all of BellSouth's charges, practices, classifications and regulations in connection with the sale of cellular service must be just and reasonable.

48. By refusing to provide MobileOne with access to the same rates and terms for cellular service that were made available to its customers, BellSouth engaged in practices that were unjust and reasonable.

49. As a result of BellSouth's violation of its obligations under §201(b), MobileOne has suffered substantial damages.

50. The Act grants MobileOne the private right to seek redress and recover damages for violations of §201(b). 47 U.S.C. §§ 206, 207.

## COUNT II

### (For Violations Of 47 U.S.C. §202(a))

51. MobileOne hereby incorporates by reference paragraphs 1 - 50 of this Counterclaim as if fully set forth herein.

52. Section §202(a) of the Act prohibited BellSouth from unreasonably discriminating against MobileOne in charges, practices, classifications, regulations, facilities, or services.

11

1099311 v2; NK8F02!.DOC

53. By refusing to provide MobileOne with access to the same rates and terms for cellular service that were made available to its customers, BellSouth engaged in practices that were unreasonably discriminatory.

54. As a result of BellSouth's violation of its obligations under §202 (a), MobileOne has suffered substantial damages.

55. The Act grants MobileOne the private right to seek redress and recover damages for violations of §202 (a). 47 U.S.C. §§ 206, 207.

## COUNT III

### (For Violations Of The Sherman Antitrust Act, 15 U.S.C. §2)

56. MobileOne hereby incorporates by reference paragraphs 1 – 55 of this Counterclaim as if fully set forth herein.

57. BellSouth engaged in unreasonable, anticompetitive conduct in its relations with MobileOne in an attempt to monopolize the South Florida market for cellular radio telephone service.

58. As a captive purchaser unable to move its customers to the alternative vendor, MobileOne was forced to pay whatever price BellSouth demanded for airtime. BellSouth exploited this situation by effecting a cost-price squeeze.

59. BellSouth's conduct constituted a denial of an essential facility. BellSouth's refusal to provide magnetic tape billing for all plans also amounted to the denial of an essential facility.

1099311 v2; NK8F02!.DOC

60. Both facilities were necessary to MobileOne's continued operations and by denying access, BellSouth destroyed MobileOne's ability to compete and ultimately eliminated MobileOne as a competitor.

61. BellSouth's conduct has removed MobileOne as a viable competitor and thereby violated the long-standing, compelling public interest in maintaining healthy competition within consumer markets. The purpose of the Sherman Act is to redress such violations.

62. As a result of BellSouth's conduct, MobileOne suffered substantial damages.

## COUNT IV

### (For Breach Of Contract)

63. MobileOne hereby incorporates by reference paragraphs 1 - 62 of this Counterclaim as if fully set forth herein.

64. BellSouth agreed in December 1997 (a) to provide MobileOne with information concerning plans and services made available to BellSouth's retail customers, (b) to develop non-discriminatory rates and plans that would put MobileOne on equal footing with BellSouth's retail customers, (c) to provide MobileOne a 25% discount on all cellular rates during the interim period until it could fashion and promulgate new, reduced, cellular rates and plans, (d) to provide MobileOne with magnetic billing tapes for all plans, and (e) to make a prepaid program available to MobileOne for resale.

65. In exchange for MobileOne's commitments, as described in paragraph 64 above, MobileOne did not pursue claims against BellSouth and continued to preserve, pursue and execute contracts with customers to sell BellSouth's service.

66. BellSouth breached its agreement by failing to honor the contractual commitments it made in December 1997.

67. As a result of BellSouth's breach of its agreement with MobileOne, MobileOne suffered damages.

## COUNT V

### (For Violations Of F.C.A. § 542.19)

68. MobileOne hereby incorporates by reference paragraphs 1 - 67 of this Counterclaim as if fully set forth herein.

69. Section 542.19 of the Florida Code provides:

It is unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce in this state.

Fla. Stat. Ch. 542.19 (1997).

70. BellSouth engaged in unreasonable, anticompetitive conduct in its relations with MobileOne in an attempt to monopolize the South Florida market for cellular radiotelephone service.

71. As a captive purchaser unable to move its customers to the alternative vendor, MobileOne was forced to pay whatever price BellSouth demanded for airtime. BellSouth exploited this situation by instituting a cost-price squeeze

72. This cost-price squeeze constituted a denial of an essential facility. BellSouth's refusal to provide magnetic tape billing for all plans also amounted to the denial of an essential facility.

73. Both facilities were necessary to MobileOne's continued operations and by denying access, BellSouth destroyed MobileOne's ability to compete and ultimately eliminated MobileOne as a competitor.

74. BellSouth's conduct has removed MobileOne as a viable competitor and thereby violated the long-standing, compelling public interest in maintaining healthy competition within consumer markets. The purpose of the antitrust provisions of the Florida Code is to redress such violations.

75. As a result of BellSouth's conduct, MobileOne suffered damages.

## COUNT VI

### (For Intentional Interference With Prospective Business Advantage)

76. MobileOne hereby incorporates by reference Paragraphs 1 - 75 of this Counterclaim as if fully set forth herein.

77. MobileOne had an advantageous business relationship with its customers and potential customers.

78. MobileOne expended significant resources to acquire and maintain its customers and otherwise cultivate an advantageous relationship with its customers.

79. MobileOne's relationship with its customers and reputation with potential customers was built, in large part, on MobileOne's ability to provide customers satisfactory cellular service at a competitive price.

80. At all times relevant to this Counterclaim, BellSouth knew of MobileOne's advantageous business relationships with its customers and potential customers. BellSouth

also knew that those relationships depended upon MobileOne's ability to deliver satisfactory cellular service at a competitive price.

81. BellSouth intentionally and unjustifiably interfered with MobileOne's business relationships with its customers and potential customers by (a) charging MobileOne rates in excess of those offered to BellSouth's retail customers, (b) restricting MobileOne's access to desirable plans and terms for cellular service, (c) unreasonably discriminating against MobileOne as set forth above, and (d) effecting a cost-price squeeze and driving MobileOne from the market.

82. Upon information and belief, BellSouth engaged in its unjustified and unlawful conduct in an attempt to harm MobileOne.

83. As a direct and proximate result of BellSouth's unlawful conduct, MobileOne suffered damages.

## COUNT VII

### (For Promissory Estoppel)

84. MobileOne hereby incorporates by reference paragraphs 1 – 83 of this Counterclaim as if fully set forth herein.

85. BellSouth promised MobileOne that it would (a) provide MobileOne with information concerning plans and services made available to BellSouth's retail customers, (b) develop non-discriminatory rates and plans that would put MobileOne on equal footing with BellSouth's retail customers, (c) provide MobileOne a 25% discount on all cellular rates during the interim period until it could fashion and promulgate new, reduced, cellular rates and plans, (d) provide MobileOne with magnetic billing tapes for all plans, (f) make a prepaid program

16

available to MobileOne for resale, and (g) otherwise work with MobileOne to ensure MobileOne's continued viability as a reseller of analog cellular phone service in South Florida.

86. BellSouth expected, or reasonably should have expected, that its promises would induce reliance on the part of MobileOne.

87. In reasonable reliance upon BellSouth's promises, MobileOne continued to preserve, pursue, and execute contracts with customers for the purchase of BellSouth service; invested substantial additional assets in developing and maintaining its business; and took other steps to ensure its continued operation as a reseller of analog cellular phone service.

88. It would result in gross injustice if BellSouth were not estopped from refusing to honor its commitments to MobileOne.

## PRAYER FOR RELIEF

WHEREFORE, MobileOne prays for judgement as follows:

89. an award to MobileOne of treble compensatory damages in an amount to be proven at trial, together with prejudgment interest;

90. an award to MobileOne of punitive damages in accordance with Florida law;

91. an award to MobileOne of the cost of this suit, including reasonable attorneys' fees; and

**92.** a grant to MobileOne of such other relief as the Court deems just and proper.

1099311 v2; NK8F02!.DOC

Dated: February 3, 2000

Respectfully submitted,

ALAN E. GREENFIELD, P.A.
2600 Douglas Road, Suite 911
Coral Gables, FL 33134
305-442-1731

Attorneys for MobileOne Cellular
  Network, Inc.

By: _____
Alan E. Greenfield, Esq.
Bar No. 031559

Of Counsel:

Leon B. Kellner, Esq. (Bar No. 462179)
Lewis J. Paper, Esq.
Edward E. Sharkey, Esq.
Jacob S. Farber, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 785-9700

1099311 v2; NK8F02!.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2000, a copy of the Counterclaim was provided to the following via first-class U.S. mail, postage prepaid:

Richard G. Gordon, Esq.
Heinrich Gordon Hargrove Weihe & James, P.A.
Broward Financial Centre, Suite 1000
500 East Broward Boulevard
Ft. Lauderdale, FL 33394
Telephone (954) 527-2800

Attorney for the Plaintiff, BellSouth Mobility, Inc.

_____
Alan E. Greenfield

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE