IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No.: 00-6055-CIV
Judge Ferguson

BELLSOUTH MOBILITY, INC., )
)
    Plaintiff, )
)
v. )
)
MOBILEONE CELLULAR NETWORK, INC., )
)
    Defendant. )
_____ )

## OPPOSITION TO MOTION TO REMAND

MobileOne Cellular Network, Inc. ("MobileOne") hereby opposes the Motion to Remand filed by BellSouth Mobility, Inc. ("BellSouth").

### Introduction

The instant case revolves around BellSouth's effort to collect on monies allegedly owed by MobileOne for the purchase of cellular radiotelephone service (sometimes referred to hereinafter as "cellular service"). As it acknowledges in the Complaint, BellSouth was in a position to provide that cellular service to MobileOne only because BellSouth holds one of only two licenses issued by the Federal Communications Commission ("FCC") to provide cellular service in South Florida.

In its Motion to Remand, BellSouth concedes that removal is proper if "the field is *completely preempted* by federal law." BellSouth Motion at 4 (emphasis in original, citation omitted). In fact, the settled law of this jurisdiction is that claims like BellSouth's to collect unpaid charges for interstate telecommunications are governed solely by federal law and that

States are precluded from exercising any authority in the area. Accordingly, state law causes of action to collect such charges are completely preempted and subject to removal. On that basis alone, it was proper to have BellSouth's Complaint removed to this Court.

Removal would still be appropriate even if Congress had not completely preempted the field relating to charges for interstate telecommunications services. BellSouth invoked the "well-pleaded complaint rule" to assert that its Complaint involves nothing more than a simple action to "collect unpaid charges for cellular telephone services. . ." BellSouth Motion at 3. However, BellSouth is simply wrong in contending that its "theory of recovery [is] founded strictly upon Florida state law." *Id*. As a common carrier licensed under federal law by the FCC, BellSouth is subject to the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. § 151 *et seq.*, particularly those provisions requiring all common carrier charges to be reasonable and devoid of unreasonable discrimination. 47 U.S.C. §§ 201(b) & 202(a). BellSouth's evidentiary burden to demonstrate that its charges to MobileOne were reasonable and non-discriminatory is particularly necessary since, by its own terms, the Reseller Sales Agreement ("Reseller Agreement") attached to and incorporated by reference in BellSouth's Complaint expired in 1997. Consequently, BellSouth will have to prove the reasonable and non-discriminatory nature of its charges to MobileOne without reference to a written agreement.

It is true, as BellSouth contends, that its Complaint does not reference the Act. But the case law in this circuit is clear that a party cannot avoid removal to federal court by carefully crafting a pleading to avoid stating an essential element that would subject the complaint to removal. In the instant case, a necessary and inherent element of BellSouth's claim against MobileOne is an allegation that BellSouth's charges will be deemed to be reasonable and non-discriminatory under the Act. Resolution of that latter question, in turn,

invokes federal questions under the Act and renders BellSouth's Complaint removable to this Court on that basis as well.

In view of the foregoing, BellSouth's Motion to Remand the case back to state court, as well as its request for an award of attorney fees and costs, should be denied.

**Factual Background**

BellSouth is licensed by the FCC to provide cellular service in South Florida. On August 11, 1993, BellSouth and MobileOne executed the Reseller Agreement to govern the sale of cellular air time to MobileOne, which would then resell the air time to its customers. A copy of the Reseller Agreement is attached to the Complaint as Exhibit A. Since cellular service involves the use of radio spectrum governed by the Act and regulated by the FCC, the cellular air time sold to MobileOne involved interstate communications. 47 U.S.C. § 332(c)(1) (all commercial mobile service carriers, including cellular carriers, subject to federal jurisdiction). Under the terms of the Reseller Agreement, MobileOne agreed to pay BellSouth for such cellular service at the rates and charges "specified in the Schedule of Rates and Charges that is then currently in effect." Reseller Agreement at §9.

According to the Complaint, BellSouth provided service to MobileOne from 1993 through at least November of 1999. *See* Complaint, Ex. B. However, by its own terms, the Reseller Agreement expired in August 1997. Reseller Agreement at §15 – "Term of Agreement." Consequently, a substantial portion of the alleged damages sought by BellSouth was incurred in the absence of any written agreement between the parties.

## Argument

### A.   Removal Issues Are Resolved by the Realities of a Plaintiff's Claim

A defendant may remove to federal court any civil action founded on a claim or right arising under the laws of the United States. 28 U.S.C. §1441(b). *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983). Typically, the presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Under an independent corollary to the well-pleaded complaint rule, a plaintiff may not prevent removal of a claim by failing to plead allegations that are necessary to resolution of its claim but that would raise federal questions. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983). If a plaintiff has "artfully pleaded" claims to avoid raising a necessary federal question, the court will uphold removal even though no federal question explicitly appears on the face of the complaint. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998); *Greater Jacksonville Transportation Co. v. Jacksonville Port Authority*, 12 F. Supp.2d 1311, 1313 (N.D. Fla. 1998). Stated another way, if a plaintiff's right to relief under state law necessarily requires resolution of a question of federal law, then a district court may exercise federal question jurisdiction over the case. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *Greater Jacksonville*, 12 F. Supp.2d at 1313.

In deciding whether removal is appropriate, a determination needs to be made whether an area of state law has been completely preempted by federal law. If it has, any state law cause of action touching upon related issues is considered, from its inception, a federal claim which would warrant removal. *Rivet v. Regions Bank of Louisiana*, 522 U.S. at 475;

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *MCI Telecommunications Corp. v. O'Brien Marketing, Inc.*, 913 F. Supp. 1536, 1540 (S.D. Fla. 1995).

### B. Removal Required Because Congress Has Preempted Field of Charges for Interstate Telecommunications Services

BellSouth does not dispute MobileOne's right of removal if Congress has completely preempted the field. BellSouth Motion at 4. BellSouth would therefore have to agree that removal is proper if, as in the present case, Congress had completely preempted the field with respect to common carrier charges for interstate cellular service.

#### 1. The Rule in This Jurisdiction

The Act provides a comprehensive regulatory scheme that governs all aspects of interstate communications services. As a common carrier licensed by the FCC to provide cellular service, all of the terms and conditions of the services provided by such carriers are subject to the Act as well as the regulations and policies of the FCC promulgated thereunder. Among the applicable statutory provisions is Section 201(b) of the Act. That subsection provides, in pertinent part, as follows:

> All charges, practices, classifications, and regulations for and in connection with any such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful. . .

47 U.S.C. §201(b). The Act also prohibits unreasonable discrimination in the charges and practices of a common carrier like BellSouth:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons or locality, or to subject any particular person, class of persons or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. §202(a). To enforce the foregoing provisions, the Act empowers customers to obtain damages from any common carrier, including cellular carriers like BellSouth, that violates section 201, section 202, any other provision of the Act, or any FCC regulation promulgated thereunder. *See* 47 U.S.C. §§ 206-207. Conversely, the Act dictates the time period during which carriers like BellSouth can seek recovery for unpaid charges from customers like MobileOne. 47 U.S.C. §415(a) ("actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues").

The Act's regulatory scheme is so comprehensive that Congress has even precluded the States from acting in some fields of *intrastate* communication. 47 U.S.C. §332(c)(1)(A) & (c)(3)(a). Section 332(c)(3)(A) provides, in pertinent part, as follows:

> Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by *any commercial mobile service or any private mobile service*, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. §332(c)(3)(A) (emphasis added). Thus, while it preserves rights States already had pursuant to sections 152(b) and 221(b) of the Act to regulate some aspects of intrastate communications, section 332 completely precludes states from acting at all with respect to the entry of or the rates charged for any cellular or other mobile communications service.

Even before section 332 was adopted (and when States retained the right to regulate all intrastate communications services), the Supreme Court had emphasized that the Act's "terms, purposes, and history all indicate that Congress formulated a unified and comprehensive regulatory system." *United States v. Southwestern Cable Co.*, 392 U.S. 157, 168 (1968). The Supreme Court observed that the FCC had been established as the single government agency with unified jurisdiction and regulatory power over all forms of electrical communication. *Southwestern Cable*, 392 U.S. at 168. To that end, Congress assigned to the

FCC exclusive authority to grant licenses under the Act. *Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 553 (1990). The FCC's exclusive jurisdiction extends not only to the granting of licenses but also to the conditions that may be placed on their use. *P&R Temmer v. FCC*, 743 F.2d 918, 927 (D.C. Cir. 1984). Acceptance of a license constitutes accession to all such conditions. A licensee may not accept only the benefits of the license while rejecting the corresponding obligations. *Id.*

In view of the detailed regulatory scheme embodied within the Act, it is hardly surprising that the United States Supreme Court inferred a congressional intent to occupy the field of interstate communications to the exclusion of state law. *See Ivy Broadcasting Co. v. American Telephone and Telegraph Co.*, 391 F.2d 486, 490 (2d Cir. 1968) (*citing Western Union Tel. Co. v. Nester*, 309 U.S. 582 (1940); *Western Union Tel. Co. v. Priester*, 276 U.S. 252 (1928); *Western Union Tel. Co. v. Boegli*, 251 U.S. 315 (1920)). As a result, federal courts, including this Court, have held that all claims concerning the duties, charges and liabilities with respect to interstate communications services are governed by federal law and that state law claims are preempted.

The foregoing judicial perspective is illustrated by *MCI Telecommunications Corp. v. O'Brien Marketing, Inc.*, 913 F. Supp. 1536, 1538 (S.D. Fla. 1995). That case concerned a long-distance carrier's claim against a customer to recover unpaid charges for telecommunications services. The Court observed that the Act reflects "a comprehensive scheme for the regulation of interstate communications." 913 F. Supp. at 1540 (*quoting Benanti v United States*, 355 U.S. 96, 104 (1957)). The Court therefore held that federal law controlled resolution of the carrier's claim to collect unpaid charges and that state law was preempted. *Id.*

An equally instructive decision is *Mellman v. Sprint Communications Co.*, 975 F. Supp. 1458 (N.D. Fla. 1996). The decision upheld a long distance carrier's removal of a customer's

suit alleging breach of contract arising with respect to the carrier's rate for international service. The Court rejected the argument of the customer, which made BellSouth's argument in the instant case, that its claim involved allegations of pure state law causes of action. The Court held that plaintiffs cannot "use artful pleading to close off a defendant's right to a federal forum." 975 F. Supp. at 1460 (*quoting Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981)). Although the customer's complaint did not expressly allege any matter raising a federal question, the Court concluded that removal was nonetheless proper because the customer's right to relief under state law was either preempted by the Act or required resolution of a substantial question of federal law. 975 F. Supp. at 1460-61.

The law in this circuit conforms with the law of other jurisdictions that have considered the issue. For example, the United States Court of Appeals for the Second Circuit has similarly held that federal courts have exclusive jurisdiction over claims involving the charges and liabilities of telephone companies for communications services and that state law claims touching upon those issues are completely preempted. *Ivy Broadcasting*, 391 F.2d at 491. In *Ivy Broadcasting*, a consumer of interstate telephone service sued the telephone company in federal court for common law negligence and breach of contract. The district court dismissed the complaint for lack of subject matter jurisdiction. On appeal, the court of appeals held that the district court had jurisdiction over the plaintiff's claims. Finding that the Act's comprehensive regulation of interstate service by communication carriers showed a congressional intent to occupy the field to the exclusion of state law, the court ruled that the duties, charges and liabilities of interstate communications carriers are governed exclusively by federal law and that states are precluded from acting in the area. *Id.* at 490-91.

    2.    **The Case Law Cited by BellSouth Is Inapposite**

BellSouth cites cases to support its contention that the Court does not need to consider the possibility of preemption as a basis for federal question jurisdiction if the preemption arises in the context of a defense. BellSouth Motion at 4. BellSouth's argument is merely another reiteration of its contention that a party can avoid federal jurisdiction under the well-pleaded complaint rule if the party fails to explicitly advance any allegation involving a federal issue. BellSouth's argument is not only flatly contradicted by the authorities cited above, which recognize the validity of federal jurisdiction in those situations where Congress has preempted a field of endeavor. BellSouth's argument is also contradicted by the very cases it cites in support.

One such case is *Baptist Hospital of Miami, Inc. v. Timke*, 832 F. Supp. 338 (S.D. Fla. 1993). That case addressed the preemptive effect of the Federal Employees Health Benefits Act ("FEHBA"). Contrary to BellSouth's argument, the Court did not hold that removal was precluded even if Congress had preempted the field of an anticipated defense. Instead, the Court merely ruled that FEHBA did not completely preempt state law claims. *Baptist Hospital*, 832 F. Supp. at 340-41. *Baptist Hospital* is therefore inapposite to BellSouth's situation because, in contrast to the FEHBA, the Act has been deemed by this Court to completely preempt state law claims with respect to charges for interstate communications services. *See Mellman*, 975 F. Supp. at 1461; *O'Brien*, 913 F. Supp. at 1540.

BellSouth's reliance on *Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193 (11th Cir. 1991), is equally misplaced. BellSouth Motion at 4. *Brown* explicitly acknowledged the exception to the well-pleaded complaint rule set forth above: that is, removal to federal court is warranted if the plaintiff's claim touches upon an issue in a field preempted by Congress. *Brown*, 934 F.2d at 1196. In fact, upon determining that ERISA preempted the state law claims at issue in that case, the Court ruled that the case was properly removed from state court to

1106935 v1; NQ4701!.DOC

federal court pursuant to 28 U.S.C. § 1441(b). *Id.* at 1196. Thus, the decision in *Brown* supports MobileOne's position that preempted claims should be removed.

The other decisions cited by BellSouth are also easily distinguished from the instant case. *See* BellSouth Motion at 5 (*citing Lipcon v. Sprint Corp.*, 962 F. Supp. 1490 (S.D. Fla. 1997); *Yanez v. Humana Medical Plan, Inc.*, 969 F. Supp. 1314 (S.D. Fla. 1997); *Riggs v. Smith*, 953 F. Supp. 389 (S.D. Fla. 1997); and *Publix Supermarket v. United Food & Commercial*, 900 F. Supp. 419 (N.D. Fla. 1995)). In *Lipcon*, the Court remanded a customer's state law claims against a communications common carrier for unjust enrichment. The customer had purchased a prepaid phone card from the carrier. Some months after the purchase, the customer found that the card did not work, and he learned from the carrier that the card had expired. When the carrier refused to replace the card or refund the purchase price, the customer sued for unjust enrichment and imposition. 962 F. Supp. at 1491. The customer claimed that the carrier never informed him that the card carried an expiration date, thus depriving him of the value of his purchase. The carrier removed the case to federal court and the customer moved to remand.

In its decision, the Court acknowledged that claims concerning the rates and charges in connection with interstate communications services are preempted by the Act. The Court held, however, that the customer's claim did not touch upon the carrier's rates and charges. 962 F. Supp. at 1494. Instead, the customer only questioned the carrier's conduct in failing to disclose the expiration date to him. On that basis, the Court distinguished the *Lipcon* facts from *Western Union* and *O'Brien*, where carriers sued to collect unpaid charges and where the Court did find a basis for federal question jurisdiction. 962 F. Supp. at 1494 n. 6.

The Court's decision in *Yanez* is equally distinguishable from the present case. There, the Court determined that a state law claim for medical malpractice was not preempted

by ERISA and, consequently, could not properly be removed on preemption grounds. *Yanez*, 969 F. Supp. 1315-16. In contrast to ERISA, the Act has already been determined by this Court to preempt state law claims touching upon rates and charges in connection with interstate communication services. The Court's decisions in *Riggs* and *Publix* are distinguishable from the present case for the same reason. *Riggs*, 953 F. Supp. at 393-94 (state law claim fell within Department of Labor "safe harbor" provision and thus was not preempted by ERISA); *Publix*, 900 F. Supp. at 420-21 (state law claim was not preempted by Labor Management Relations Act).

In sum, then BellSouth's cases cannot overcome the authority cited above that the instant case can be removed.

### C. Removal Required Because BellSouth's Claim Presents a Federal Question

Even if BellSouth's claims were not completely preempted by the Act, there is no question that the claims present essential questions of federal law and are thus removable. BellSouth's Complaint seeks damages based on charges for the sale of cellular service to MobileOne. Although artfully pled to avoid invoking federal law, the Complaint states causes of action that require construction and application of federal law for resolution.

As a common carrier regulated by the Act and the FCC, all services that BellSouth provided to MobileOne were subject to the terms of the Act and FCC regulations and policies promulgated thereunder. BellSouth's right to collect unpaid charges is premised upon compliance with the Act's various provisions. For that reason too, BellSouth's claims are properly removed to this Court.

#### 1. The Rule in This Circuit

The Eleventh Circuit has ruled that claims by interstate communication carriers to collect charges for service necessarily implicate federal law and thus give rise to a federal

question. One example is *Western Union International, Inc. v. Data Development, Inc.* 41 F.3d 1494 (11th Cir. 1995). In that case, a provider of interstate communication services sued its customer in federal court to collect unpaid charges. The district court held that it did not have subject matter jurisdiction. On appeal, the Court of Appeals held that a carrier's claim to recover charges for interstate communication service is necessarily predicated on federal law. Consequently, the federal courts have subject matter jurisdiction over such claims because they "arise under" federal law. *Id.* at 1496.

The law in the Eleventh Circuit conforms with the law in the majority of circuits that have considered the issue. *See MCI Telecommunications Corp. v. Graham*, 7 F.3d 477, 478 (6th Cir. 1993) (common carrier's complaint to collect charges for telephone service "arises under" federal law for the purpose of determining subject matter jurisdiction); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1093-96 (3rd Cir. 1995), *cert. denied* 519 U.S. 815 (1996) (carrier's breach of contract action against customer for collection of unpaid charges raises a federal question creating federal subject matter jurisdiction); *AT&T v. City of New York*, 83 F.3d 549, 552 (2d Cir. 1996) (district court has subject matter jurisdiction over a carrier's claim against customer for unpaid bills in connection with interstate telephone service); *MCI Telecommunications Corp. v. Garden State Investment Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) (carrier's suit to collect unpaid charges for telecommunication services is an attempt to enforce rights created by federal law and provides district court subject matter jurisdiction); *MCI Telecommunications Corp. v. Graphnet, Inc.*, 881 F. Supp. 126, 131 (D.N.J. 1995) (carrier's claim seeking recovery for service provided presented federal question); *Cahnmann v. Sprint Corp.*, 961 F. Supp. 1229, 1231 (N.D. Ill. 1997) (claims for breach of contract and misrepresentation touching upon rates charged for telecommunication service present federal claim).

The one case cited by BellSouth on this principle is inapplicable. BellSouth Motion at 5-6 (*citing MCI Telecommunications Corp. v. Credit Builders of America, Inc.*, 980 F.2d 1021 (5th Cir. 1993)). To begin with, the Fifth Circuit appears to be the only appellate court to hold that a claim for unpaid interstate communications charges does not involve federal law. *See Teleconcepts*, 71 F.3d at 1094 (calling the Fifth Circuit "the lone appellate court to hold otherwise"). In addition, the Eleventh Circuit, like other courts, has expressly rejected the rationale and holding in *Credit Builders*. *See Western Union*, 41 F.3d at 1496 & n. 3 (11th Cir. 1995) (*Credit Builders* opinion overlooks controlling Supreme Court precedent); *Teleconcepts*, 71 F.3d at 1094 ("we are not persuaded by the analysis in *Credit Builders*); *International Magazine Service of Atlanta, Inc. v. Allnet Communications Services, Inc.*, 469 S.E.2d 305, 306 (Ga. App. 1996) (same). Even a district court in the Fifth Circuit has declined to follow *Credit Builders*. *See MCI Telecommunications Corp. v. United Showcase*, 847 F. Supp. 510, 514 (N.D. Tex. 1994). In view of the foregoing, *Credit Builders* cannot justify a remand of BellSouth's Complaint to state court.

1106935 v1; NQ4701!.DOC

### 2. BellSouth's Claims Present Federal Questions of Law

BellSouth's Complaint seeks damages based on charges for the sale of cellular service to MobileOne. Although the Complaint does acknowledge BellSouth's status as an FCC-licensed cellular carrier, the Complaint does not expressly invoke the provisions of any federal law. Nevertheless, in order to succeed on its Complaint, BellSouth must secure a favorable resolution of federal issues. In particular, BellSouth will need to show that it imposed and charged rates for service provided to MobileOne in accordance with the provisions and terms of the Act.

Those issues derive from BellSouth's status as an FCC-licensed cellular carrier subject to the Act as well as the FCC regulations and policies promulgated thereunder. BellSouth must, for example, demonstrate that its charges for cellular service are reasonable and not unreasonably discriminatory. 47 U.S.C. §§ 201(b) and 202(a). That showing, in turn, will require BellSouth to demonstrate that the rates charged to MobileOne comport with the FCC's rules and policies with respect to the resale of cellular service. *See Interconnection and Resale Obligations Pertaining to Commercial Mobile Radio Services*, 11 FCC Rcd 18455, 18462, 18467 (1996) (cellular carriers and other providers of wireless communications services must provide cellular resellers with bulk discounts and otherwise avoid discrimination against cellular resellers); *Cellular Communications Systems*, 86 FCC 2d 469, 511 (1981) (subsequent history omitted) (cellular carriers are obligated to allow for the unrestricted resale of their service by third parties); 47 C.F.R. §20.12 (FCC regulation requires that cellular carriers not discriminate in the provision of rates and other services to resellers).

BellSouth's burden in securing a favorable resolution of the foregoing issues is a particularly heavy one since BellSouth cannot rely on the Reseller Agreement to justify the reasonableness or non-discriminatory nature of much, if not most, of its services. That

14

agreement – which is attached to and a part of the Complaint – shows by its own terms that it expired in 1997. Consequently, BellSouth cannot rely on a breach of the Reseller Agreement to support the amount sought in damages.

Other evidentiary hurdles exist which require resolution of federal issues. BellSouth has asserted in its Complaint that damages are warranted because of BellSouth's belief that MobileOne has "been unjustly enriched due to its refusal to pay BellSouth for services furnished under the Reseller Agreement." Complaint at ¶24. Resolution of that unjust enrichment claim alone requires resolution of federal questions: there is no way to determine whether MobileOne has been "unjustly enriched" without first deciding whether BellSouth's charges and practices comport with provisions of the Act as well as FCC rules and policies that require reasonable and non-discriminatory rates for cellular resellers like MobileOne.

Regardless of how artfully pleaded, then, BellSouth's Complaint presents a question of federal law that confers jurisdiction on this Court. *See Western Union*, 41 F.3d at 1497; *O'Brien*, 913 F. Supp. at 1540; *AT&T v. New York*, 83 F.3d at 552; *Teleconcepts*, 71 F.3d at 1096; *Graham*, 7 F.3d at 480; *Garden State*, 981 F.2d at 388; and *Graphnet*, 881 F. Supp. at 131-32. On this basis alone, the Court should deny BellSouth's Motion to Remand.

### D. BellSouth's Request for Attorneys' Fees is Unwarranted

Even if the Court were to determine that removal of this case was improvident for some reason, BellSouth should not receive attorneys' fees. An award of attorneys' fees for improper removal rests within the sole discretion of the Court. *IMCO USA, Inc. v. Title Insurance Co. of Minnesota*, 729 F. Supp. 1322 (M.D. Fla. 1990). In those situations where grounds for removal are unavailing but nevertheless colorable, this Court has declined to grant an award of attorneys' fees to the plaintiff. *Penelas v. Arms Technology, Inc.*, 71 F. Supp. 1251, 1255 (S.D.Fla. 1999). This approach is consistent with the approach of other courts in the

Eleventh Circuit. *See, e.g., Whitlock v. Jackson National Life Ins. Co.*, 32 F. Supp. 2d 1286, 1293 (M.D.Ala. 1998) (plaintiff not entitled to attorneys' fees upon remand where removal jurisdiction was not "patently lacking").

BellSouth cannot reasonably contend that removal jurisdiction is patently lacking in the present case. In fact, as set forth above, there is little question but that this Court has subject matter jurisdiction over the claim. Accordingly, even if the Court were to rule otherwise, it would not be appropriate to award BellSouth its attorneys' fees.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, MobileOne respectfully requests that the Court deny BellSouth's Motion to Remand.

Dated: February 10, 2000

Respectfully submitted,

ALAN E. GREENFIELD, P.A.
2600 Douglas Road, Suite 911
Coral Gables, FL 33134
305-442-1731

Attorneys for MobileOne Cellular Network, Inc.

By: _____
Alan E. Greenfield, Esq.
Bar No. 031559

Of Counsel:

Leon B. Kellner, Esq. (Bar No. 462179)
Lewis J. Paper, Esq.
Edward E. Sharkey, Esq.
Jacob S. Farber, Esq.
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 785-9700

1106935 v1; NQ4701!.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2000, a copy of the Opposition to Motion to Remand was provided to the following via first-class U.S. mail, postage prepaid:

Richard G. Gordon, Esq.
Heinrich Gordon Hargrove Weihe & James, P.A.
Broward Financial Centre, Suite 1000
500 East Broward Boulevard
Ft. Lauderdale, FL 33394
Telephone (954) 527-2800

*Attorney for the Plaintiff, BellSouth Mobility, Inc.*

_____
Alan E. Greenfield

1106935 v1; NQ4701!.DOC