IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No.:  00-6055-CIV
Judge Ferguson

BELLSOUTH MOBILITY, INC.,                  )
                                           )
              Plaintiff,                   )
                                           )
v.                                         )
                                           )
MOBILEONE CELLULAR NETWORK, INC.,          )
                                           )
              Defendant.                   )
_____)

NIGHT BOX
FILED

MAR 2 0 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

**REPLY TO SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO REMAND**

MobileOne Cellular Network, Inc.  ("MobileOne") hereby replies to the

Supplemental Memorandum (the "Supplement") filed by BellSouth Mobility Inc.

("BellSouth") on March 13, 2000 in support of its motion to remand the instant matter to

state court (the "Remand Motion").


**Introduction**

At the status hearing before the Court on March 6, 2000, the Court authorized

BellSouth to file its Supplement to explain its claim that its Remand Motion was supported

by *Western Union International, Inc. v. Data Development, Inc.*, 41 F.3d. 1494 (11th Cir.

1995) ("*Western Union*").  The Court's authorization for that Supplement arose in the

context of MobileOne's observation at the status hearing that (1) every decision in this

circuit addressing claims for unpaid charges for telephone service had concluded that such

claims raised federal questions, (2) in replying to MobileOne's opposition to its Remand

Motion, BellSouth had failed to cite a single decision in this circuit which held otherwise,

and (3) in its response to MobileOne's opposition to BellSouth's Remand Motion, BellSouth had failed to address, let alone distinguish, the numerous cases cited by MobileOne holding that claims like BellSouth's for collection of unpaid charges for telecommunications service raised a federal question.

Having considered the matter in its entirety (including this Court's decision to schedule a trial in October 2000), BellSouth now withdraws its Remand Motion. At the same time, BellSouth asserts – based solely on its further examination of *Western Union* – that the Court lacks subject matter jurisdiction because *Western Union* involved collection of charges under a legally-mandated tariff, which is not present in the instant case.

BellSouth's analysis is misguided and at odds with every decision that has considered the issue in this circuit (as well as the overwhelming majority of decisions which have addressed the matter in other circuits). Although *Western Union* does reference the obligation of the carrier to file tariffs, the court did not say – as BellSouth asserts – that the absence of a tariff would have resulted in a contrary decision. Other decisions in this circuit and elsewhere, however, have addressed that issue and have held that all contract claims for unpaid telecommunications charges are subject to federal jurisdiction. BellSouth does not mention those other cases. Nor does BellSouth identify any decision in this or any circuit which explicitly holds that this Court does not have federal jurisdiction over BellSouth's claims.

The almost universal conclusion of courts around the country is supported by Section 332(c)(3)(A) of the Communications Act of 1934 (the "Act"), 47 U.S.C. §332(c)(3)(A), which preempts states from regulating any aspect of rates of cellular carriers like BellSouth or other providers of what the Federal Communications Commission ("FCC") calls Commercial Mobile Radio Service ("CMRS"). Accordingly, this Court does

2

have subject matter jurisdiction based on the federal question raised by BellSouth's contract claims.

### Federal Question Jurisdiction Exists

Any civil case filed in state court may be removed to federal court if the case could have been brought originally in federal court. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). As one court explained, that standard is "'easily met,' and . . . an '*arguably* plausible claim must be allowed to proceed.'" *MCI Telecommunications Corp. v. Graham*, 7 F.3d 477, 479 (6th Cir. 1993)(citations omitted, emphasis in original).

Under the case law of this circuit and almost every other circuit that has considered the issue, claims to collect unpaid charges for interstate telecommunications services present federal questions of law that support removal to federal court.[*] Contrary to BellSouth's contention, these cases are not exclusively premised on any requirement to file tariffs but on a recognition that the Act is a comprehensive regulatory scheme that governs the terms and conditions of telecommunication services. Consequently, a carrier's right to collect charges for interstate telecommunication services is premised upon and governed by federal law regardless of whether the charge is imposed by tariff or contract.

In *Western Union*, a telecommunications carrier sought to recover charges that were levied pursuant to a tariff filed with the FCC under Section 203(a) of the Act, 47 U.S.C. §203(a). The court concluded that the parties' duties and obligations "grow out of

---

[*]    The only circuit which appears to deviate from this uniform approach is the Fifth Circuit. *MCI Telecommunications Corporation v. Credit Builders of America, Inc.*, 980 F.2d 1021 (5th Cir. 1993). However, that case was decided before the adoption of Section 332(c)(3)(A) of the Act, which explicitly precludes state regulation of rates for cellular service. In any event, this circuit has rejected the Fifth Circuit's analysis. *See Western Union*, 41 F.3d at 1496 n.3.

and depend upon the statute." 41 F.3d at 1496. On that basis, the court held that federal jurisdiction existed.

Western Union did not hold that the absence of a tariff would have produced a contrary decision. It is noteworthy in that regard that Western Union relied in part on *Ivy Broadcasting Co. v. AT&T*, 391 F.2d 486 (2d Cir. 1968)("*Ivy*"), a leading case in this area. In *Ivy*, the court concluded that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely be federal law and that *the states are precluded from acting in this area.*" 391 F.2d at 491 (emphasis added). That conclusion was not dependent upon the existence of a tariff. Quite the contrary. The court explained that, "[w]here neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law." *Id.* Stated another way, federal law governs claims for unpaid charges for telecommunications services rendered pursuant to a tariff or a contract.

The decisions of this circuit embody that conclusion. *E.g. Mellman v. Sprint Communications Company*, 975 F. Supp. 1458 (N.D. Fla. 1996)("*Mellman*"). In that latter case, a customer filed what it believed to be a simple contract claim against Sprint Communications Company ("Sprint") with respect to the provision of telecommunications service. Although Sprint had filed a tariff, the customer had asserted that the contract governed any dispute. The district court in this circuit held otherwise, based in part on *Ivy*. The court observed that the Act comprises "a comprehensive scheme for the regulation of interstate communications" that occupies the field, thereby preempting state law. 975 F. Supp. at 1461. The court therefore concluded that, "regardless of how Plaintiff has fashioned his claims, he is seeking relief which will directly implicate the Defendant's tariff,

*as well as certain provisions of the [Act]."* 975 F. Supp. at 1463 (emphasis added). In other words, federal jurisdiction was not predicated on Sprint's filing of a tariff but on the fact that the Act occupied the entire field of regulation. Consequently, any claim necessarily implicated provisions of the Act. *Compare DeCastro v. AWCS, Inc.,* 935 F. Supp. 541, 550 (D.N.J. 1996) (federal jurisdiction does not apply to claim relating to billing disclosures in conjunction with telecommunications services because the claim " 'does not challenge Sprint's provision of services *or* its tariff rates, *nor does it dispute the calculation of those rates'* ").

The foregoing analysis demonstrates that BellSouth's contract claims present federal questions which imbue this Court with jurisdiction. As the court explained in *Mellman,* all interstate carriers like BellSouth must demonstrate that their charges for communications services – whether provided by tariff or contract — are reasonable and not discriminatory under Sections 201(b) and 202(a) of the Act. *Mellman,* 975 F. Supp. at 1461. That basic principle is no less applicable to BellSouth's claims than it was to the plaintiff's claims in *Mellman.*

It is true, as BellSouth states, that cellular carriers like BellSouth do not have to file tariffs with the FCC. The absence of a tariff requirement for cellular carriers, however, does not mean, as BellSouth concludes, that state law causes of action for collection of cellular charges are permissible The FCC decision to dispense with tariffs for cellular carriers (and other CMRS providers) was nothing more than a regulatory decision made by the FCC pursuant to a grant of discretion by Congress under the Act. Rather than a withdrawal from the field, the absence of tariffs reflects the FCC's decision  based on specific congressional authorization --  on how best to regulate the market.

5

Contrary to BellSouth's contention, tariffs for cellular and other CMRS service were not eliminated by the Telecommunications Act of 1996. *See* Supplement at 3-4. Rather, the elimination of tariffs for cellular carriers and other CMRS providers finds its roots in Section 332(c) of the Act, which was enacted in 1993. Section 332(c)(3)(A) of those 1993 amendments explicitly prohibits states from becoming involved in the rates charged by cellular carriers and other CMRS providers:

> Notwithstanding Sections 2(b) and 221(b), no state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service. . .

47 U.S.C. § 332(c)(3)(A). As one court recently explained, the foregoing provision eliminated any doubt "that Congress intended complete preemption when it said 'no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service.'" *Bastien v. AT&T Wireless*, ____F.3d _____, 2000 US App Lexis 3885 (7th Cir. March 6, 2000), attached as Exhibit 1. The court held that Section 332(c)(3)(A) "completely preempted the regulation of rates and market entry, allowing removal to federal court." *Id.* at 9. On that basis, the court rejected the plaintiff's attempt to use the rubric of a "well-pleaded" complaint to avoid federal jurisdiction. *Id.*

In conjunction with prohibiting state regulation of cellular and other CMRS rates, Section 332(c) endowed the FCC with the authority to forbear from enforcing other provisions of the Act if the FCC determined that such enforcement was not necessary to protect consumers and was otherwise consistent with the public interest. 47 U.S.C. § 332(c)(1)(A). However, Congress explicitly precluded the FCC from forbearing in its enforcement of Sections 201 and 202 of the Act, thus signaling Congress' intention that the FCC continue to ensure that rates for cellular and other CMRS service be reasonable and devoid of discrimination. *Id.*

6

In later deciding to exercise that congressional authority, the FCC decided to forbear from requiring tariffs from cellular carriers and other CMRS providers because Sections 201 and 202 of the Act would still be applicable and would "provide an important protection in the event there is a market failure." *Implementation of Sections 3(n) and 332 of the Communications Act*, 9 FCC Rcd 1411, 1478-79 (1994) (subsequent history omitted). In short, the FCC's decision to forbear was an exercise of its exclusive regulatory authority over the field of interstate telecommunication services.

The FCC was willing to forbear from requiring tariffs from cellular carriers like BellSouth only because the rates of BellSouth and other cellular carriers would remain subject to scrutiny under the Act. This federal protection is particularly important in the instant case because, as explained in MobileOne's prior opposition to BellSouth's Remand Motion, (1) the written contract on which BellSouth relies expired by its own terms in 1997, thus leaving the nature of the charges to be applied to MobileOne uncertain and (2) by its own terms, BellSouth's complaint includes a claim of unjust enrichment by MobileOne, which, on its face, would necessarily require a determination if BellSouth charges were reasonable and non-discriminatory. BellSouth's limited and erroneous analysis of *Western Union* does not in any way explain why those determinations do not, by themselves, justify federal jurisdiction. Nor does BellSouth cite any decision in this circuit or anywhere else which would support its bald claim that the absence of a governing tariff precludes the exercise of federal jurisdiction. In light of cases in this circuit and elsewhere holding that the Act constitutes a comprehensive scheme that precludes state involvement, it must be concluded that this Court does have federal question jurisdiction.

## Conclusion

WHEREFORE, in view of the foregoing and the entire record herein, it is respectfully requested that BellSouth's removal motion be dismissed in light of the withdrawal of the motion by BellSouth or, in the alternative, denied.

Dated:  March 20, 2000                    Respectfully submitted,

                                          DICKSTEIN SHAPIRO MORIN &
                                          OSHINSKY LLP
                                          Leon B. Kellner, Esq. (Bar No. 462179)
                                          Lewis J. Paper, Esq.
                                          Edward E. Sharkey, Esq.
                                          Jacob S. Farber, Esq.
                                          2101 L Street, N.W.
                                          Washington, D.C.  20037
                                          202-785-9700

                                          Attorneys for MobileOne Cellular
                                            Network, Inc.

                                    By:   _____
                                          Edward E. Sharkey, Esq.

Of Counsel:

Alan E. Greenfield, P.A.
2600 Douglas Road, Suite 911
Coral Gables, FL  33134
305-442-1731

8

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2000, a copy of the foregoing **REPLY TO**

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REMAND** was

provided to the following via facsimile and first-class U.S. mail, postage prepaid :

Richard G. Gordon, Esq.
Clifford A. Wolff, Esq.
Heinrich Gordon Hargrove Weihe & James, P.A.
Broward Financial Centre, Suite 1000
500 East Broward Boulevard
Ft. Lauderdale, FL  33394
Telephone (954) 527-2800

*Attorney for the Plaintiff, BellSouth Mobility, Inc.*

Edward E. Sharkey, Esq.

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE